UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | REPORT AND RECOMMENDATION |
| v. | 20-CR-00192(JLS)(JJM) |
| MOHAMMAD ALAWI, | |
| Defendant. | |

_____

Defendant Mohammad Alawi is charged in a two-count Indictment [22][1] with possession with intent to distribute, and distribution of, hydrocodone within 1,000 feet of a public elementary school, in violation of 21 U.S.C. §860(a). These charges arise from Alawi's January 9, 2020 arrest inside of the Bayview Deli, in Hamburg, New York, where he worked, pursuant to an arrest warrant arising from the earlier criminal Complaint against him [1]. Before the court is Alawi's motion to suppress the statements he made to law enforcement while being transported from the Bayview Deli. Greenman Affidavit [31], ¶¶105-07.[2]

By Decision and Order dated June 2, 2021, District Judge Sinatra directed that a suppression hearing be held "regarding the spontaneity of those statements". United States v. Alawi, 2021 WL 2252808, *1 (W.D.N.Y. 2021). That evidentiary hearing was held before me on July 20, 2021 [60], at which Drug Enforcement Agency Special Agent ("SA") Sabrina May testified for the government. Thereafter, the parties filed post-hearing submissions [70, 71]. For the following reasons, I recommend that Alawi's motion be granted.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination (upper right corner of the page).

[2]     All other portions of defendant's pretrial motion [31] have been addressed.

**BACKGROUND**

SA May entered the Bayview Deli shortly after Alawi's arrest at approximately 11:50 a.m. July 20, 2021 hearing transcript [60] at 11-12. Alawi did not appear to be under the influence of drugs or alcohol, and while SA May knew that he had a previous arrest in 2012 for selling a controlled substance, she was unaware that he allegedly suffered from a brain injury. Id. at 13, 55. SA May also knew that Alawi spoke English from the recordings of three controlled purchases made from him. Id. at 13-14.

While handcuffed, Alawi was momentarily placed in a Hamburg police vehicle before being transferred to the rear seat of SA May's vehicle. Id. at 15. With the vehicle's door open, SA May read Alawi his Miranda rights from a card (gov. ex. 10 [61-2]). [60] at 15-17. Alawi responded that he understood his rights and invoked his right to remain silent. Id. at 17, 44. Because of the weight of the evidence they had, SA May did not feel that she needed a statement from Alawi at the time of his arrest, but acknowledged that a statement from Alawi "would have been a bonus to the case" - *i.e.*, "would be helpful". Id. at 58, 60-61.

After Alawi invoked his right to remain silent, he was seat belted in SA May's vehicle and they departed for the federal courthouse, along with Task Force Officer ("TFO") Jason Batt, who was in the front passenger seat. Id. at 18. SA May testified that she and TFO Batt had "minimal interaction" with Alawi on the ride to the courthouse. Id. at 42. SA May told Alawi that they "had a Federal arrest warrant for him" and that they were "transporting him to the Courthouse". Id. at 48-49. However, she could not recall how much other information she told him or what was said. Id. at 42-43, 48, 52.

At some point during the ride, Alawi began talking about his medication. Id. at 52. Given his prior invocation of the right to remain silent, SA May was surprised by his

statements. Id. at 53-54.  However, she did not remind him that he had invoked his rights because she was interested in hearing what he had to say. Id. at 54.  According to SA May, Alawi's statements were not in response to any questioning by either her or TFO Batt. Id. at 23-24.  SA May also did not recall either her or TFO Batt making any particular statements that elicited a response from Alawi. Id. at 56.  She further denied that there was any conversation between her and TFO Batt that was intended to elicit a response from Alawi (id. at 56), but could not recall whether there were any portions of their conversation that may have unintentionally triggered a response from Alawi. Id. at 56-58.

SA May did not take any contemporaneous notes of Alawi's statements. Id. at 36.  Shortly after Alawi's arrest, SA May prepared a Report of Investigation ("ROI") (gov. ex. 7 [61-1]), which stated that:

> "[d]uring the drive to the U.S. District Court . . . ALAWI made the following spontaneous utterances.  ALAWI stated that sometimes people tell him they're in pain.  ALAWI then stated that a few years ago he was in an accident and broke three bones in his back.  His doctor prescribes him medicine, enough to take three pills a day but he stated he only takes two pills a day.  ALAWI also mentioned something about his wife having a prescription." Id. at 1; [60] at 18, 21-22.

Prior to Alawi's arrest, SA May was aware that he was prescribed hydrocodone. Id. at 40.  Following Alawi's arrest, an empty pill bottle was recovered from the deli with his name on it, but SA May believed that she first learned of this at the courthouse. Id. at 43-44.

Although Alawi elected not to testify at the hearing,[3] he submitted an Affidavit [37] in support of his suppression motion that stated:

> "During the ride, the agents made various comments to me to which I responded . . . . The statements made by me were in response to questions or statements which were put to me.  Unfortunately, because my English is

---

[3] According to defense counsel, his decision as to whether to have Alawi testify was a difficult one because he suffers from a brain injury and has difficulty with comprehension. [60] at 61-62.  Therefore, at counsel's request, I gave him several days to make that decision. Id. at 62; July 20, 2021 Minute Entry [57].

very bad, I interpreted the statements made by the agents as seeking an answer or a response relative to my prescription medication. They were not spontaneous." Id. at ¶¶6-7.

## DISCUSSION

Alawi seeks to suppress statements which were "the product of custodial interrogation" after he invoked his right to remain silent. Greenman Affidavit [31], ¶105-07. Since there is no dispute that he was in custody, the issue is whether Alawi's statements were the product of interrogation.

An interrogation occurs when an individual "is subjected to either express questioning or its functional equivalent" - i.e., "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980). Discussions between law enforcement within earshot of a defendant can constitute the functional equivalent of interrogation. See Id. The relevant inquiry "focuses primarily upon the perceptions of the suspect, rather than the intent of the police". Id. at 301.

However, "[v]olunteered statements of any kind are not barred by the Fifth Amendment". Miranda v. Arizona, 384 U.S. 436, 478 (1966). Hence, where, as here, a suspect invokes his right to remain silent, interrogation must cease "unless the accused himself initiates further communication, exchanges, or conversations with the police". Edwards v. Arizona, 451 U.S. 477, 485 (1981). See also Wolfrath v. LaVallee, 576 F.2d 965, 973 n. 6 (2d Cir. 1978) ("Miranda . . . is inapplicable . . . [to] spontaneous statements which are not the result of 'official interrogation'"). "The Government has the burden of proving by a preponderance of the evidence that a defendant made his statements spontaneously and not as the result of custodial

interrogation." United States v. Choudhry, 24 F. Supp. 3d 273, 279–80 (E.D.N.Y. 2014), aff'd, 649 Fed. App'x 60 (2d Cir. 2016) (Summary Order).

Since I could not evaluate Alawi's credibility through his live testimony, I give less weight to his Affidavit than I do to the live testimony of SA May, whom I find to be credible. See United States v. Murray, 2015 WL 7871358, *4 (W.D.N.Y. 2015) ("courts give greater weight to witness testimony, which was subject to cross examination, than to sworn affidavits"); United States v. Walker, 2021 WL 1725513, *5 (W.D.N.Y.), adopted, 2021 WL 1723159 (W.D.N.Y. 2021) (declining to credit statements in an affidavit which contradicted the officer's sworn hearing testimony because the "[t]he live, credible testimony, which was subject to cross-examination, plainly differs from Ivey's assertions to the contrary"); United States v. Cherry, 2021 WL 2206969, *13 (S.D.N.Y. 2021) (same); United States v. Diaz, 2020 WL 6083404, *7 (S.D.N.Y. 2020) (same).

Alawi argues that SA May's testimony "admitting that she did not recall what was said[,] . . . what the officers were discussing or what conversation they had with [Alawi] after his invocation of rights do not satisfy the [g]overnment's burden". Alawi's Memorandum of Law [71] at 9. By contrast, the government contends that "SA May stated unequivocally under oath . . . that [Alawi] made . . . statements . . . spontaneously". Government's Post-Hearing Brief [70] at 7. It contends that "[t]here is no support in the record that [Alawi] was . . . questioned by anyone". Id.

I agree with the government that the record establishes that Alawi was not expressly questioned following the invocation of his rights. SA May credibly testified that his statements were not in response to any direct questioning. [60] at 23-24. However, it is the government's burden to establish by a preponderance of the evidence that Alawi's statements

were not the product of either express interrogation or *its functional equivalent*.  See Innis, 446 U.S. at 300–01.

SA May's testimony falls short of satisfying the government's burden.  The only evidence offered by the government that Alawi's statements were spontaneous (*i.e.*, not the product of the function equivalent of express questioning) is SA May's contemporaneous ROI (gov. ex. 7 [61-1]), which states that Alawi's statements were "spontaneous utterances". Id. at 1. However, her testimony fails to support that characterization.  Other than telling Alawi that they "had a Federal arrest warrant for him" and that they were "transporting him to the Courthouse" ([60] at 48-49), she could not recall what was said between her and TFO Batt or their conversation with Alawi. Id. at 42-43, 48-49, 52.  Nor could she even recall at what point during the ride Alawi made the statements. Id. at 52.  When asked if there was anything said between her and TFO Batt which may have unintentionally elicited a response from Alawi, SA May testified "I don't recall". Id. at 57-58.

Her lack of recall of what was said during the ride to the courthouse is insufficient to establish that Alawi's statements were not induced by law enforcement conduct.  "[N]ot recalling something is *not* the same as denying it". One Way Apostolic Church v. Extra Space Storage Inc., 792 Fed. App'x 402, 404 (7th Cir. 2019) (emphasis in original). *See also* Franklin v. Shah, 2020 WL 2542924, *3 (S.D. Ill. 2020) ("lacking recollection is different than [an] affirmative[ ] den[ial]"); United States v. Vickers, 1997 WL 801460, *3 (A.F. Ct. Crim. App. 1997) ("a failure to recall is not a denial"); Ace Rent-A-Car, Inc. v. Empire Fire & Marine Ins. Co., 580 F. Supp. 2d 678, 690 n. 5 (N.D. Ill. 2008) ("[h]is inability to recall is not a denial").

Although SA May denied that she intended to elicit a response from Alawi, the focus is "primarily on the perceptions of the suspect, rather than the intent of the police".  Innis,

446 U.S. at 301.  SA May's lack of recall fails to establish by a preponderance of the evidence that nothing was said by either her or TFO Batt that they should have known was reasonably likely to elicit an incriminating response from Alawi.

## CONCLUSION

For these reasons, I recommend that Alawi's motion to suppress statements (Greenman Affidavit [31], ¶¶105-07) be granted.  Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by November 15, 2021. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: November 1, 2021

/s/Jeremiah J. McCarthy<br>
JEREMIAH J. MCCARTHY<br>
 United States Magistrate Judge